IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ARNETTA GILLIAM,

Plaintiff,

v.

BERKELEY CONTRACT PACKAGING, LLC (IL),

Defendant.                              No. 12-cv-1174-DRH-SCW

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

## I.   INTRODUCTION

Before the Court is a motion for summary judgment by defendant Berkeley

Contract Packaging, LLC (IL) ("Berkeley") (Doc. 25).   Berkeley moves for

summary judgment on the allegations of plaintiff Arnetta Gilliam ("Gilliam") of

*quid pro quo* and hostile work environment sexual harassment brought pursuant

to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e2(a)(1) ("Title VII"),

and the Illinois Human Rights Act, 775 ILCS 5/2-101(E) (the "IHRA"). Gilliam of

course opposes summary judgment (Doc. 34).

## II.   UNDISPUTED FACTS[1]

Berkeley provides packaging services for soaps, shampoos, and other

consumer goods Lever Bros. manufactures at Berkeley's Edwardsville, Illinois

---

[1] This section of course represents the Court's interpretation of what facts are undisputed. Gilliam takes issue with many statements in Berkeley's recitation of "uncontroverted facts," but fails to highlight which facts are undisputed.

facility.    From  March  23,  2011,  to  June  21,  2011,  two  temporary  staffing

agencies,  REM  and  UniQue  Consultants,  assigned  Gilliam  to  Berkeley's

Edwardsville  facility.  At  Berkeley,  Gilliam  worked  on  the  assembly  line  (the

"Line")  and  as  a  cross-trainee  in  Quality  Control  ("QC").    Gilliam  reported  to

Shirley  Reed  ("Reed"),  QC  Supervisor.  Ken  Lewis  ("Lewis")  served  as  the  QC

Manager.

As  a  cross-trainee,  Gilliam  worked  on  the  Line  as  needed.  In  June  2011,

Gilliam  worked  on  the  Line  under  the  direct  supervision  of  Belem  Garcia

("Garcia").  Gilliam  disputes  the  events  of  June  21,  2011.   However,  on  June  21,

2011,  Lewis  spoke  with  Garcia  and  instructed  Berkeley's  Floor  Manager,  DeJuan

Lockhart  ("Lockhart"),  to  "let  [Gilliam]  go"  (Doc.  26-4,  Lewis  Aff.,  ¶  9).[2]  That  same

day,  Gilliam  was  instructed  not  to  return  to  work  again  at  Berkeley.

Gilliam  alleges  she  filed  a  Charge  of  Discrimination  with  the  Illinois

Department  of  Human  Rights  ("IDHR")  and  the  Equal  Employment  Opportunity

Commission  ("EEOC")  in  July  2011.[3]   On  June  14,  2012,  the  IDHR  issued

Gilliam  a  Notice  of  Substantial  Evidence  (Doc.  38-1).   The  EEOC  adopted  the

IDHR's  findings  and  issued  Gilliam  a  Notice  of  Suit  Rights,  on  October  11,  2012

(Doc.  38-2).

Gilliam  filed  her  initial  complaint,  solely  raising  claims  under  the  IHRA,  in

Madison  County,  Illinois,  on  September  11,  2012.   Berkeley  removed  Gilliam's

---

[2] As explained below, Gilliam argues a reasonable fact-finder could conclude Lockhart influenced
the decision to tell Gilliam not to return.
[3] The Charge of discrimination has not been provided to the Court.

amended complaint, which additionally raises claims under Title VII, to this Court on November 15, 2012.

> Gilliam's amended complaint alleges the following:

> Beginning in May 2011, Lockhart began directing unwelcome comments, unwelcome leering, and unwelcome touching toward Gilliam. By way of example but not limitation, he said to her that she had a "girly[,] girly body," "I think you're kind of cute," "I like those jeans you're wearing[.]" In addition, Lockhart regularly leered at Gilliam. Lockhart directed this conduct toward Gilliam nearly every day she worked between May 2011 and the date of her termination.

> On or around June 16, 2011, Lockhart touched Gilliam in a sexual manner by rubbing his hand down her back beginning at the right side of her shoulder proceeding to the middle of her back. Gilliam objected to Lockhart's unwelcome touching.

(Doc. 2-1, pp. 4-5, ¶¶ 15-16).

Gilliam's amended complaint brings separate counts of *quid pro quo* and hostile work environment sexual harassment under both Title VII and the IHRA. As for *quid pro quo* harassment, Gilliam alleges Berkeley made, "Gilliam's submission to Lockhart's conduct described in this Complaint either explicitly or implicitly a term or condition of her employment," and that, "Gilliam's rejection of Lockhart's conduct described in this Complaint was used as the basis for [Berkeley's] termination of Gilliam's employment." As for her claims of hostile work environment, Gilliam alleges, "Lockhart's conduct described in this Complaint directed toward Gilliam had the purpose or effect of substantially interfering with Gilliam's work performance and/or created an intimidating, hostile, or offensive working environment," and was, "sufficiently severe or

pervasive to alter the conditions of Gilliam's employment and create an abusive working environment."

Berkeley argues summary judgment in its favor is warranted as Gilliam cannot establish a *prima facie* claim of sexual harassment.

### III.  LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

### IV.  LAW AND APPLICATION

Gilliam alleges claims of *quid pro quo* sexual harassment and hostile work environment in violation of the IHRA and Title VII. As the IHRA's prohibition of sexual discrimination closely mirrors that of Title VII, Illinois courts and the

Illinois Department of Human Rights generally look to federal decisions concerning sexual harassment under Title VII for guidance concerning claims under the IHRA. *See Trayling v. Bd. of Fire & Police,* 652 N.E.2d 386, 393 (Ill. App. 1995).

Gilliam couches her sexual harassment allegations in separate counts of hostile work environment and *quid pro quo* sexual harassment. The Supreme Court has explained that these distinctions are generally of limited importance in evaluating sexual harassment claims. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 752 (1998).

> Title VII prohibits,
>
> an employer-
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.

42 U.S.C. § 2000e-2(a)(1).

"*Quid pro quo*" and "hostile work environment" do not appear in the statutory text. *See id. Ellerth* explains that the distinction arose to denote two separate situations, one explicit and one constructive, which both violate Title VII. An example of explicit discrimination with respect to terms or conditions of employment, referred to as a *quid pro quo* claim, would encompass, "an employer who demands sexual favors from an employee in return for a job benefit." *Ellerth,* 524 U.S. at 752. In contrast, a hostile work environment claim

encompasses, "sexually demeaning behavior," but it must be "severe and pervasive" to alter the terms and conditions of employment. *Id.*

These distinctions are relevant when, as here, there is a threshold question of whether a plaintiff can prove discrimination in violation of Title VII. "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive." *Id.* at 753-54.

1.   *Quid Pro Quo*

The EEOC Guidelines describe *quid pro quo* harassment as follows:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

29 C.F.R. § 1604.11(a). Stated another way, "[q]uid pro quo harassment occurs in situations where submission to sexual demands is made a condition of tangible employment benefits." *Bryson v. Chicago State Univ.,* 96 F.3d 912, 915 (7th Cir. 1996). Such a theory of harassment requires a plaintiff to show: "(1) that she or he is a member of a protected group, (2) the sexual advances were unwelcome, (3) the harassment was sexually motivated, *(4) the employee's reaction to the*

*supervisor's advances affected a tangible aspect of her employment*, and (5) respondeat superior has been established." *Id.* at 915 (emphasis added).

Berkeley focuses on the fourth element recited above in arguing that Gilliam cannot offer evidence that her "rejection" of Lockhart's alleged sexual conduct is related to the decision not to let her return to Berkeley.

Berkley offers an affidavit of Lewis, QC Manager for Berkeley during the relevant period (Doc. 26-4). Lewis states:

> In June 2011, [] Gilliam worked on the Line under the supervision of [] Garcia, a female. During this time, I learned that [] Gilliam refused to perform the duties of a Line employee and was insubordinate toward [] Garcia.
>
> On or about June 21, 2011, I spoke with [] Garcia and confirmed [] Gilliam's refusal to perform the duties of a Line employee and acts of insubordination. I made the decision that [] Gilliam "could not work at Berkeley with that attitude" and instructed Berkeley's Floor Manager, [] Lockhart, to "let [Gilliam] go."
>
> At no point prior to her termination did [Gilliam] ever report to me any alleged sexual harassment nor did I learn of any allegation of sexual harassment prior to her termination.

(*Id.* at ¶¶ 8-11).

Lewis further states, through a supplemental affidavit, that:

> I made the decision that [] Gilliam, a temporary Line worker and Quality Control trainee, employed by Unique staffing agency, was not to return to work at Berkeley. I made this decision after speaking directly with [] Gilliam's Line Supervisor, Belem Garcia regarding: (A) [] Gilliam's refusal to perform the duties of a Line employee; and (B) [] Gilliam's insubordination toward [] Garcia. Berkeley's Floor Manager, Antonio Oseguera, was present when I spoke with [] Garcia.
>
> [] Garcia's report of [] Gilliam's conduct was the sole basis on which I instructed [] Lockhart that [] Gilliam was not to return to work at Berkeley. [] Lockhart did not, in any way, influence or

attempt to influence my decision that [] Gilliam be instructed not to return to work at Berkeley.

(Doc. 36-3, ¶¶ 3, 4).

Berkeley further offers an affidavit of Brandy Niggli ("Niggli"), Berkeley's QC Auditor (Doc. 26-5).  At Gilliam's deposition, Gilliam stated Niggli was standing next to her when the alleged sexual touching incident took place (Doc. 26-2, pp. 89-90).  Niggli states:

> I have never witnessed [] Lockhart touch [] Gilliam inappropriately.
>
> I have never witnessed [] Lockhart act or speak in an inappropriate manner to [] Gilliam or any other person working at Berkeley.
>
> [] Gilliam did comment that [] Lockhart was "trying to hit on [her]." She did not provide any specific actions or statements by [] Lockhart. I told her to report any incidents to her supervisor, [] Reed, if she felt uncomfortable.

(Doc. 26-5, ¶¶ 6-8).  By way of supplemental affidavit, Niggli also states,

> I was present, standing right beside [] Gilliam, when [] Lockhart touched [] Gilliam's shoulder on one occasion. That touch was not sexual in nature.
>
> [] Gilliam did not respond to the touch, either verbally or with body language, and did not indicate, in any way, that she was offended by the touch.

(Doc. 36-2, ¶¶ 4, 5).

And finally, Berkeley cites the following exchange at Gilliam's deposition.

Q: He [Lockhart] never asked you out on a date; right?

A: No, sir.

.   .   .

Q: He's never asked for any sexual favors, has he?

A: No, sir, he has not.

(Doc. 26-2, pp. 90 and 106).

On the basis of the above, Berkeley argues Gilliam has not presented evidence of a *quid pro quo* sexual harassment claim.

Gilliam offers her own testimony in support of her claim of *quid pro quo* harassment.  Gilliam generally alleges Lockhart, "watched [her] all the time," and stared at her "from head to toe" which "freaked her out." And that he stated to her, "I think you're very pretty. I like those sexy jeans you're wearing," "you look good in those sexy jeans," "now that you in quality, you are going to lose that girly[,] girly figure that you have," and, "I know it's got to be that soap I'm smelling or is it you?"

At her deposition and in her answer to an interrogatory, Gilliam states that on June 16, 2011, Lockhart touched Gilliam from her shoulder down to the middle of her back, above where she could touch. Gilliam alleges she immediately stated, "[p]lease don't touch me" (Doc. 26-2, pp. 98-99; Doc. 34-1). On June 21, 2011, the date she was told not to return, Lockhart allegedly moved her to the back of a Line (although she stated at her deposition that this is not part of her sexual harassment claim).  Gilliam also alleges Lockhart commented to her at one point that she had walked passed him six or seven times without speaking to him. She does not allege that Lockhart ever made sexual demands or requested sexual favors of her of any kind.

Gilliam argues her "rejection of his advances," *i.e.,* her statement, "[p]lease don't touch me," seemingly along with the additional conduct alleged above, creates a reasonable inference of sexual harassment.

While much information is not provided to the Court as to the allegations of "insubordination" that led to Gilliam's being told not to return on June 21, 2011, Gilliam denies that she told co-worker Sureta Lesure ("Lesure") that she did not want to work on the Line and did not complain that Lesure's work was inefficient (Doc. 26-2, pp. 80-83).

Berkeley offers Lewis' sworn statements that he made the decision that Gilliam was not to return to work after speaking directly with Gilliam's Line supervisor, Garcia.  He states Lockhart did not, in any way, influence or attempt to influence that decision.

Assuming the truth of Gilliam's testimony that she was not "insubordinate" on June 21, 2011, Gilliam does not allege that Lockhart made any sexual demands or requested any sexual favors of any kind. She testifies that she told Lockhart not to touch her after he touched her on the shoulder down the middle of her back. This is the only instance of physical conduct alleged and the only instance she allegedly acknowledged his "advances."  She states that Lockhart called her pretty, said she had a girly body, wore sexy jeans, alluded that she smelled like soap, alluded that she might gain weight, commented that Gilliam walked passed without speaking, and stared at her.  Gilliam states she ignored his comments and staring.  In totality, these allegations do not permit a

reasonable inference that her reaction to the shoulder/back touch and/or her decision to ignore Lockhart's comments/staring was connected in any way to her being told not to return to work at Berkeley.

In opposition to summary judgment, Gilliam merely speculates that her alleged "rejection" of Lockhart's conduct led Lockhart to tell Lewis that Gilliam was insubordinate.   The record is devoid of evidence that would reasonably permit such a finding.   "[S]peculation is not enough to get the case to a jury." *Overly v. KeyBank Nat'l Assoc.,* 662 F.3d 856, 864 (7th Cir. 2011) (citing *Davis v. Carter,* 452 F.3d 686, 697 (7th Cir. 2006)).   On the basis of all of the above, summary judgment is granted in favor of Berkeley on Gilliam's claims of *quid pro quo* harassment.

### 2.   Hostile Work Environment

A *prima facie* claim of hostile work environment based on sexual harassment requires that a plaintiff provide evidence that: "1) she was subjected to unwelcome harassment, 2) the harassment was based on her sex, 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and 4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 941 (7th Cir. 2007).

Here, Berkeley argues Gilliam has not offered evidence of conduct by Lockhart that was sufficiently severe or pervasive to create an actionable hostile work environment claim. The Court wholeheartedly agrees.   Gilliam must

demonstrate her work environment was both subjectively and objectively offensive to be deemed "hostile." *Id.* at 941.  Assuming for purposes of this decision that Gilliam has offered evidence that she subjectively believed her work environment was offensive, Gilliam has not presented sufficient evidence of objectively offensive conduct. In determining conduct is objectively offensive, courts will look to, "the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance." *Id*.

On the basis of Gilliam's allegations recited above, Berkeley correctly argues that this alleged conduct is analogous to conduct which the Seventh Circuit and district courts within the Seventh Circuit have held does not rise to the level of objective offensiveness required under Title VII.  *See Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (complaints of eight gender-related comments during the course of the plaintiff's employment, including that "the only valuable things to a woman is that she has breasts and a vagina," was insufficient to a demonstrate a hostile work environment); *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 463-64 (7th Cir. 2002) (two brief back rubbing incidents which did not involve "threats, intimidation, or humiliation," not actionable harassment under Title VII); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson,* 212 F.3d 976, 977 (7th Cir. 2000) (allegations by secretary that partner at law firm asked her if he could see pictures of her in items she purchased from "Frederick's of Hollywood," noted that he preferred to see her in shoes with "her toes out," asked her if all her

"clothes correspond," asked her to look at pictures of women in bondage, and asked her if a new outfit was purchased at "Frederick's of Hollywood," if proven, did not rise to actionable harassment under Title VII); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (allegations of simple teasing, including, "ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks," were insufficiently severe to amount to discriminatory changes in the "terms and conditions of employment"); *Weiss v. Coca-Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir. 1993) (allegations that employee called plaintiff a, "'dumb blond,' put his hand on her shoulder several times, placed 'I love you' signs in her work area and attempted to kiss her in a bar," amounted to relatively isolated incidents incapable of withstanding summary judgment); *Saxton v. AT & T Co.,* 10 F.3d 526, 528-34 (7th Cir. 1993) (allegations that a supervisor took the plaintiff to a jazz club, placed his hand on her thigh, kidder her, and later asked her on a date and lurched at her from behind some bushes was not sufficiently severe as to create a hostile work environment); *Howard v. Sheahan,* 546 F. Supp. 2d 566, 569-70 (N.D. Ill. 2008) (Hibbler, J.) (allegations that two supervisors complimented the plaintiff, asked her on dates, "leered" at her, and told her she was "hot," not actionable under Title VII); *Harris v. Franklin-Williamson Human Servs., Inc.,* 97 F. Supp. 2d 892, 902 (S.D. Ill. 2000) (Herndon, J.) (claims that over ten year period, supervisor made inappropriate comments about phone call,

called plaintiff a "Dragon Lady" and a jerk, twice stated, "women rub their eyes, men rub their balls," told a joke while simulating masturbating, told a blond joke, and made a comment about the plaintiff's breasts, were not sufficient to withstand summary judgment under Title VII); *Lindblom v. Challenger Day Program, Ltd.*, 37 F. Supp. 2d 1109, 1114-15 (N.D. Ill. 1999) (Gottschall, J.) (allegations that over the course of one year, co-worker stared at plaintiff while teaching, touched her five times when he bent down to talk to her, touched her shoulder ten times to get her attention, stood too close to her, questioned her about her weekend, and once fondled her at a private party, insufficient under Title VII). Gilliam's allegations of hostile work environment clearly do not rise to the level of severity necessary to withstand summary judgment.

In summary, the Court has reviewed Gilliam's evidence offered in support of her claims, namely her deposition, and finds Gilliam has not come forward with evidence that would permit a reasonable fact finder to find in her favor as to her claims of sexual harassment under Title VII and the IHRA.[4] Summary judgment shall be entered in favor of Berkeley as to all four counts of Gilliam's amended complaint.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** defendant Berkeley's motion for summary judgment in its entirety (Doc. 25). Plaintiff Gilliam's

---

[4] Gilliam spends a large portion of her brief in opposition to summary judgment arguing that a reasonable jury could find Berkeley was Gilliam's employer within the meaning of Title VII and the IHRA.  As Berkeley does not move for summary judgment on the basis that it was not Gilliam's employer, the Court does not address this issue.

amended complaint is dismissed with prejudice. The Clerk is instructed to enter

judgment accordingly. This file is closed.

**IT IS SO ORDERED.**

Signed this 27th day of June, 2014.

Digitally signed by
David R. Herndon
Date: 2014.06.27
12:50:53 -05'00'

**Chief Judge**
**United States District Court**